WOFFORD, et al. *v.* WOFFORD, et al.

No. 42256 June 11, 1962 142 So. 2d 188

*L. G. Fant, Jr.,* Holly Springs; *W. B. Meek,* Eupora, for appellants.

*P. J. Townsend, Jr.,* Drew; W. D. Gary, *Eupora,* for appellees.

KYLE, J.

This case is before us on appeal by E. E. Wofford and others, defendants and cross-complainants in the court below, from a decree of the Chancery Court of Webster County rendered in favor of George C. Wofford and others, complainants and cross-defendants in the court below, confirming the title of the complainants in and to approximately 317½ acres of land in Webster County, Mississippi, which was owned by Jeff E. Wofford, deceased, during his lifetime, and dismissing the cross bill of the defendants and cross-complainants seeking cancellation of a quitclaim deed executed by Mrs. Mary Ellen Wofford, now deceased, the surviving widow of Jeff E. Wofford, to the complainants' father, George W. Wofford, dated December 12, 1944, and purporting to convey said lands to the said George W. Wofford, and supplemental decree confirming a partition sale of an 80-acre tract of land owned by the cross-complainants and cross-defendants as tenants in common.

The complainants, appellees on this appeal, are the only heirs-at-law, devisees and legatees of George W. Wofford, deceased, also referred to in the record as "G. W. Wofford", who died sometime during the year 1955. The complainants' father, George W. Wofford, deceased, was a son of the above mentioned Jeff E. Wofford and his wife, Mary Ellen Wofford. The defendants named in the amended bill of complaint, appellants on this appeal, are the remaining heirs and representatives of deceased heirs of Jeff E. Wofford and Mary Ellen Wofford.

The complainants filed their original bill of complaint on March 18, 1959. The defendants filed their answer and cross bill on August 6, 1959. The complainants later obtained permission to file an amended bill of complaint, and on November 9, 1959, the amended bill was filed. The defendants then filed their answer to the amended

bill, together with a cross bill in which they asked for affirmative relief.

The complainants alleged in their amended bill that Jeff E. Wofford, on November 29, 1921, executed a deed of conveyance to his wife, Mary Ellen Wofford, in which he intended to convey and attempted to convey to his wife certain lands in Webster County, which he owned at that time, including approximately 225 acres of land in Section 5, Township 21 North, Range 11 East; that an error was made in the description of the land intended to be conveyed in said deed, in that the land in said Section 5 was described in said deed as the "NW¼ and the W½ of the NE¼, except 14½ acres off of the north end, of said Section 5," when, in fact, Jeff E. Wofford did not own the NW¼ and the W½ of the NE¼, except 14½ acres off of the north end, of said Section 5, but did own the SW¼ and the W½ of the SE¼, except 14½ acres off of the north end, of said Section 5, which was the land in Section 5 intended to be conveyed by the said Jeff E. Wofford to his wife by said deed; and that said land, as thus correctly described, was thereafter assessed for tax purposes in the name of Mary Ellen Wofford, as the owner thereof. The complainants further alleged that the said Jeff E. Wofford died intestate on August 8, 1926; and that after his death the said Mary Ellen Wofford continued to occupy said lands and receive the rent therefrom, claiming the same as her own until she conveyed said land to G. W. Wofford, the complainants' father, a short time before her death; and that the error in the description of said lands in the deed from Jeff E. Wofford to Mary Ellen Wofford was not discovered until a short time after the death of the said G. W. Wofford in 1955.

The complainants further alleged that Mary Ellen Wofford conveyed the above described lands to their father, G. W. Wofford, by a quitclaim deed dated De-

cember 12, 1944, and that said lands had been assessed to G. W. Wofford for tax purposes since that time. The complainants further alleged that after the death of Jeff E. Wofford all of the children and other heirs of Jeff E. Wofford recognized Mary Ellen Wofford's ownership of the lands, and recognized the deed dated November 29, 1921, as in the nature of a family settlement, and by their acts continued to recognize the validity of said deed until the errors in the description of said land was called to their attention by the complainant George C. Wofford in 1955; that after the discovery of the errors in said description the complainants requested that the defendants execute quitclaim deeds to them conveying said lands to the complainants but the defendants had neglected and failed to do so. The complainants further alleged that the errors in the description of the lands in Section 5 should be corrected by a proper decree of the court.

In Count II of the amended bill the complainants claimed title to said lands by adverse possession, alleging as grounds therefor that after the death of Jeff E. Wofford in 1926, Mary Ellen Wofford lived on the lands and claimed title to the same until the lands were purchased by G. W. Wofford at a tax sale in 1942, and that G. W. Wofford thereafter claimed title to said lands until his death on March 9, 1955; that Mary Ellen Wofford's possession and occupancy was hostile, open and notorious, exclusive and continuous for more than ten years, and that all of the other heirs of Jeff E. Wofford recognized her claim of ownership; and that G. W. Wofford after the conveyance of said lands to him by Mary Ellen Wofford in 1944, had claimed ownership of said land and had continued to rent the land, with instructions that the rent money be given to Lizzie Wofford for her maintenance and support, until his death in 1955; and that the said Lizzie Wofford had accepted said rent money with the knowledge and

understanding that G. W. Wofford and the complainants, after G. W. Wofford's death, were the owners of said land.

In Count III of their amended bill the complainants alleged that, if they were mistaken in their claim to have the above-mentioned deed corrected and to have title to said lands confirmed in them by adverse possession, they were entitled to restitution, that is to say, reimbursement from the other heirs of Jeff E. Wofford, deceased, for all expenditures made by G. W. Wofford and the complainants for taxes, maintenance and improvements, since G. W. Wofford took over the management of said lands for his mother in 1939.

The complainants therefore asked that the above mentioned deed from Jeff E. Wofford to Mary Ellen Wofford, dated November 29, 1921, be reformed so as to describe correctly the land situated in Section 5, Township 21, Range 11 East, which the grantor intended to convey to the grantee therein; and if mistaken in that, that title to the lands be confirmed in the complainants as the owners thereof by adverse possession and by laches on the part of the defendants; and if mistaken in that, that the defendants be required to make restitution for all expenses incurred by the complainants and G. W. Wofford, as set out in the accounting attached to the bill of complaint, in the amount of $2,961.32. The complainants also prayed for general relief.

The defendants in their answer to the amended bill denied that the complainants were the owners of the lands described in the bill of complaint or any part thereof, except a child's part in said land which was devised to them by their late father, G. W. Wofford, being an undivided one-ninth interest; and the defendants denied that the complainants were entitled to the relief prayed for in their amended bill or any relief whatsoever. The defendants denied that the instrument dated November 29, 1921, alleged to have been executed

by Jeff E. Wofford to his wife, Mary Ellen Wofford, was a valid deed of conveyance. The defendants alleged in their answer that said instrument was never delivered in any manner by the grantor, but was retained in his possession and control the remainder of his life, with the intent that it should not be effective during his lifetime and that no interest should vest in the grantee until his death. The defendants admitted that it was the intent of Jeff E. Wofford to convey the land that he owned to his wife Mary Ellen Wofford, but denied that he intended that the conveyance should take effect during his lifetime. The defendants admitted that Mary Ellen Wofford, after the death of her husband, occupied said land and received a part of the income therefrom, but they denied that she owned the land in fee simple or ever claimed that she owned the land in fee simple. The defendants denied that all of the children and other heirs of Jeff E. Wofford and Mary Ellen Wofford recognized Mary Ellen Wofford's ownership of said lands after the date of the execution of the above mentioned deed, or that they recognized the deed as being in the nature of a family settlement. The defendants averred in their answer that, on the contrary, all of the children of Jeff E. Wofford and Mary Ellen Wofford herself recognized that the intention of their father was that the mother should occupy and have the use of said lands during her lifetime and that Lizzie Wofford should thereafter have the use of the lands during her lifetime, and that at her death the lands should be divided among all of the heirs of Jeff E. Wofford, deceased.

The defendants averred in their answer that the purported conveyance of the lands by Mrs. Mary Ellen Wofford to G. W. Wofford, dated December 12, 1944, was null and void and of no effect, because it was procured by G. W. Wofford by mistake and at a time when G. W. Wofford had the management and control of Mary Ellen Wofford's affairs and a relation of trust

and confidence existed between them; that no consideration was paid for the deed; and that the deed was obtained by the exercise of undue influence on the part of G. W. Wofford, and at a time when Mary Ellen Wofford did not have the benefit of independent counsel. The defendants denied that the complainants had acquired title to the lands by ouster of their cotenants or by adverse possession. They denied that G. W. Wofford acquired title to the lands by virtue of the alleged tax sale in 1942; and the defendants averred in their answer that any title which may have passed to G. W. Wofford as a result of his payment of the taxes on the lands inured to the benefit of his mother as a result of the fiduciary relation which existed between him and his mother at the time of the purchase of said tax title. The defendants admitted that the rents and profits of the lands had gone to Mrs. Mary Ellen Wofford during her lifetime, and since her death to Lizzie Wofford, but they averred that Mary Ellen Wofford had never owned more than a child's share in said lands with a widow's right to occupy the homestead during her lifetime. The defendants denied that the complainants were entitled to restitution for expenditures made by George W. Wofford before and after the execution of the deed to him in 1944.

The defendants incorporated in their answer a cross bill, in which they alleged that the purported deed to G. W. Wofford dated December 21, 1944, was void and of no effect because it was obtained by undue influence and by fraud as set forth in their answer, and that said deed should be cancelled and held for naught. The defendants further alleged in their cross bill that the cross-complainants and cross-defendants were tenants in common of the lands described in the amended bill of complaint and also an additional tract of land described as the S½ of the NE¼ of Section 8, Township 21, Range 11 East; and that said land should be partitioned or

sold for a division of proceeds among the several co-tenants. The defendants, as cross-complainants, there-fore asked that the purported deed from Mary Ellen Wofford to the late G. W. Wofford be cancelled, and that the court appoint a commissioner for the purpose of selling all of the above mentioned lands for a division of proceeds among the several cotenants according to their respective interests.

Seventeen witnesses testified during the hearing be-fore the chancellor; and at the conclusion of the hear-ing the chancellor dictated into the record his findings of fact and his conclusions of law. The chancellor found that Jeff E. Wofford, on November 29, 1921, conveyed to his wife, Mary Ellen Wofford, by warranty deed, certain lands in Webster County described therein, in-cluding the land described as the NW¼ and the W½ of the NE¼, except 14½ acres off of the north end, Section 5, Township 21, Range 11 East, which was not owned by the grantor at the time of the execution of said deed; that it was the intention of the grantor to convey to his wife, Mary Ellen Wofford, by said deed the lands which he owned in said Section 5 as herein-above correctly described; that the deed was duly ex-ecuted and acknowledged on November 29, 1921, and was placed among the grantor's papers where he us-ually kept deeds and other important instruments; and that the grantor thereafter recognized his wife as owning said lands, and the lands were assessed to her as the owner thereof and the taxes thereon were paid in her name. The chancellor found that Mary Ellen Wofford could not read or write and had no business ability whatever, and that she relied completely on her husband to attend to all the business; and that the deed was considered by both the grantor and the grantee as hav-ing been delivered on the date of the execution and ac-knowledgment of same.

The chancellor found that Jeff E. Wofford died intestate on August 8, 1926, and soon thereafter, on December 16, 1926, his son, Emmett Wofford, found the deed among his papers and filed the same for record; that after the death of Jeff E. Wofford the said Mary Ellen Wofford took possession of the lands and operated the same by and through her son, Emmett Wofford, for a period of several years, and received the rents therefrom; that she and her unmarried daughter, Lizzie Wofford, lived on the lands until Mary Ellen Wofford's death, except for a period of about ten years, during which time they lived in the nearby town of Mantee; that all of the heirs of Jeff E. Wofford knew that Mary Ellen Wofford was exerting her ownership of the lands and that her exertion of ownership was notice to all of the heirs that she was claiming to be the sole owner of the lands; and that she had acquired title to the lands by adverse possession before she conveyed the same to George W. Wofford in 1944. The chancellor found that the lands were sold for 1939 taxes while Emmett Wofford was looking after his mother's business, and that George W. Wofford bought the lands at a tax sale and received a deed therefor in 1942, and technically became the owner of the lands under the tax deed; that George W. Wofford thereafter expended money on the lands for taxes and upkeep; and that Mary Ellen Wofford conveyed the lands to George W. Wofford on December 12, 1944, for a good and valuable consideration. The chancellor found that George W. Wofford allowed his mother and sister to live on the lands and receive the rents therefrom after the lands had been conveyed to him.

The chancellor found that the complainants and Mary Ellen Wofford were not guilty of laches, but the defendants were guilty of laches; that the deed dated November 29, 1921, should be reformed so as to describe correctly the lands in Section 5, Township 21 North,

Range 11 East, which were owned by Jeff E. Wofford at the time said deed was executed, and that title to the lands should be confirmed in the complainants. The chancellor found that the additional 80-acre tract of land referred to in the defendants' cross bill, which was owned by Jeff E. Wofford at the time of his death, should be sold for a division of proceeds among the several cotenants; and the chancellor ordered a sale of the 80-acre tract for a division of proceeds among the several cotenants. The chancellor found that George W. Wofford and his heirs had expended for necessary repairs and taxes on the 80-acre tract the sum of $855.88, and that the complainants were entitled to have that amount paid to them out of the proceeds of the sale of the 80-acre tract.

A decree was entered in conformity with the above mentioned findings of the chancellor; and from that decree the defendants and cross-complainants have prosecuted this appeal.

The appellants' attorneys have assigned and argued four points as grounds for reversal of the decree of the lower court: (1) That the chancellor erred in his finding that the purported deed executed by Jeff E. Wofford to his wife, Mary Ellen Wofford, dated November 29, 1921, was a valid deed, despite the fact that the testimony showed that the deed was never delivered to the grantee during the lifetime of the grantor; (2) that the chancellor erred in entering a decree reforming the deed of November 29, 1921; (3) that the chancellor erred in his finding that the purported deed executed by Mrs. Jeff E. Wofford (Mary Ellen Wofford) to G. W. Wofford dated December 12, 1944, was a valid deed, and not clearly voidable for the reason that the deed was obtained by G. W. Wofford at a time when a fiduciary relation existed between him and his mother which raised a presumption of fraud and undue influence, and that presumption was not overcome by any evidence

offered on behalf of the complainants; and (4) that there was not sufficient evidence in the record to support the chancellor's finding that George W. Wofford had expended $855.88 for the payment of taxes and the making of repairs and improvements on the 80-acre tract of land which was ordered to be sold for a division of proceeds among the cotenants.

As to the first point argued, we think there is sufficient evidence in the record to support the chancellor's finding that the heirs of Jeff E. Wofford had full knowledge of the deed executed by the said Jeff E. Wofford to his wife on November 29, 1921, and Mary Ellen Wofford's claim of ownership of the lands by virtue of that deed. We also think that the chancellor was justified in his finding that defendants had been guilty of laches and were estopped to attack the validity of that deed after the lapse of more than 30 years. The conclusion reached by us on that point, however, loses its importance in view of the conclusion that we have reached on the third point listed in the appellants' assignment of errors.

We think the chancellor erred in his finding that George W. Wofford became the owner of the lands by virtue of the quitclaim deed executed to him by his mother on December 12, 1944, and that title to the lands should be confirmed in the complainants. The testimony in the record clearly shows that the relation which existed between George W. Wofford and his mother at the time the quitclaim deed to him was executed by his mother was a fiduciary relation. It was a relation in which confidence was reposed by one, and the influence which naturally grows out of such confidence was possessed by the other. Ham v. Ham, 146 Miss. 161, 110 So. 583. There is no evidence in the record of any misrepresentation or actual fraud in the procurement of the deed. But the testimony shows that the influence growing out of the confidential relationship which exist-

ed between George W. Wofford and his mother was actively exerted by George to induce his mother to convey the property to him.

The testimony shows without dispute that George W. Wofford had managed the property for his mother for a period of several years immediately prior to the execution of the quitclaim deed whereby the property was conveyed to him. J. E. Easterwood, who lived approximately one-half mile from the Wofford home and was well-acquainted with all members of the Wofford family, testified that George Wofford managed the property from the time Mrs. Mary Ellen Wofford and Miss Lizzie came back to the home place from Mantee during the late thirties; that the land went back to the state for taxes during the thirties and George paid the taxes on it, and "Cousin Ellen and Lizzie" got the rent from the place. Easterwood stated that George exercised control over the property, put a new roof on the main dwelling house, and made repairs on the barn and a tenant house. Mrs. Ocie Hillhouse testified that, after Mrs. Wofford and Miss Lizzie came back to the home place from Mantee, George looked after the place for them, that George told her that he looked after the place, and his mother said that he did. Mrs. Hillhouse stated that George told her about the deed which his mother had executed to him; that George told her that the land had gone back to the state for taxes for three years, and that he went to Jackson and redeemed it and spent quite a sum of money; that he had paid the taxes on the lands and had made repairs and improvements; and that he had told his mother that, as much money as he had involved in it, it looked like to him that she ought to deed the land to him, and if any of the rest of the heirs wanted to pay his money back he would take the money and let them have the place and forget about it. Mrs. Oma Logan, whose mother was a half sister of Mrs. Mary Ellen Wofford, testified that, after

Mrs. Wofford and Miss Lizzie moved back on the place, there was a colored man who did the farm work, but George Wofford was the boss. Mrs. Logan also testified that she had heard Mrs. Mary Ellen Wofford tell her mother a short time before her death about George taking the place and redeeming it from a tax sale, which cost a lot of money, and that she had given George a deed to the place, and George had given her and Lizzie a home there the rest of their lives with the income from the place. Mrs. Hillhouse and Mrs. Logan were called to testify as witnesses on behalf of the complainants.

J. Ruble Griffin, who was engaged in the practice of law at Eupora in 1954, and who was called to testify as a witness on behalf of the defendants, stated that he was consulted by E. E. Wofford, one of the defendants and cross-complainants in, 1954, about filing a suit against George W. Wofford, and that he came to the courthouse with E. E. Wofford and his son-in-law and examined the deed records in the office of the chancery clerk, and that he found a record of the deed to George W. Wofford from his mother, and an oil and gas lease which had been executed by George W. Wofford. Griffin stated that he then arranged a conference with George Wofford, in the late fall or winter of 1954, in Mr. Wofford's office at Drew, Mississippi, and that he arranged to have Ralph Scott Wofford go with him to Drew. He stated that during the conference which he had with Mr. Wofford he informed Mr. Wofford that the other heirs of Jeff E. Wofford and Mrs. Mary Ellen Wofford thought that the property owned by their father and mother during their lifetime should be the property of the children of Mrs. Mary Ellen Wofford, deceased. Griffin testified that Mr. Wofford then told him in effect "that he had made a promise to his father, Mr. Jeff Wofford, prior to his death * * * that he would see that nothing would ever happen to

Lizzie''; and that Mr. Wofford then stated to him that ''the purpose in him taking this deed from his mother was to see that nobody could disturb Lizzie in her possession of the property, and that he didn't intend to defeat the property rights of other people, but he did want to be reimbursed for his expenses that he had incurred before there was any division of the property made.'' Griffin stated that unfortunately, two or three weeks after this, Mr. George Wofford died.

Griffin's testimony concerning the statements made to him by George W. Wofford during the conference which he had with him a few weeks before his death was corroborated by the testimony of Ralph Scott Wofford, a nephew of George W. Wofford, who made the trip to Drew with Griffin and was present during the conference.

In the case of Ham v. Ham, 146 Miss. 161, 110 So. 583, the Court said that the rules governing gifts, conveyances, etc., between parties to a fiduciary relation in fact are the same as those governing gifts, conveyances, etc., between parties occupying the conventional fiduciary relations, such as physician and patient, attorney and client, guardian and ward, trustee and *cestui que trust,* etc. The Court in its opinion in that case said:

 '' 'It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and duties involved in it need not be legal, it may be moral, social, domestic, or merely personal.' 2 Pomeroy Equity Jurisprudence (4th Ed.), Section 956.

 ''When such a relation exists, and the parties thereto — 'consciously and intentionally deal and negotiate with each other, each knowingly taking a part in the

transaction, and there results from their dealing some conveyance or contract or gift, * * * the principle literally and directly applies. The transaction is not necessarily voidable, it may be valid, but a presumption of its invalidity arises which can only be overcome, if at all, by clear evidence of good faith, of full knowledge, and of independent consent and action.' 2 Pomeroy Equity Jurisprudence (4th Ed.), Section 957.

"The burden of overcoming this presumption is on the party claiming under the conveyance, contract, or gift. Meek v. Perry, 36 Miss. 190; Hitt v. Terry, 92 Miss. 710, 46 So. 829."

In the case of Hickey v. Anderson, 210 Miss. 455, 49 So. 2d 713, the Court said: "It is well-established in Mississippi and elsewhere that where a confidential relationship is shown to exist between parties to the deed, and where the grantee, who is the beneficiary, is the dominant spirit in the transaction, the law raises a presumption of undue influence, or, as is sometime said, a deed is prima facie voidable in such cases. Under such circumstances the burden or duty of repelling or rebutting such a presumption is cast upon the grantee. 16 Am. Jur., Deeds, Sections 392-395, 402; 26 C.J.S., Deeds, Sections 193, 58; Watkins v. Martin, 1933, 167 Miss. 343, 147 So. 652; Lindeman's Estate v. Herbert, 1940, 188 Miss. 842, 193 So. 790; Ham v. Ham, 1926, 146 Miss. 161, 110 So. 583; Bourn v. Bourn, 1932, 163 Miss. 71, 140 So. 518; Griffith, Miss. Chancery Practice (2d Ed. 1950), Section 589."

It can be readily seen from what we have stated above that the relation which existed between G. W. Wofford and his mother at the time the quitclaim deed of December 12, 1944, was executed was a fiduciary relation in fact, and that the deed was prima facie voidable at the instance of Mary Ellen Wofford during her lifetime or at the instance of her heirs after her death.

 █ The duty of repelling or rebutting the presumption of undue influence in this case rested upon the complainants; █ and, in our opinion, the complainants failed to meet that burden.

The record in our opinion shows that the deed executed by Mrs. Wofford was not intended primarily as a deed of gift. That fact clearly appears from the testimony of the complainants' witnesses and the testimony of Ruble Griffin, who testified as a witness on behalf of the defendants. If we accept as true the statements of the complainants' witness, Mrs. Ocie Hillhouse, the deed was executed upon the advice and in compliance with the expressed wishes of G. W. Wofford himself, who told his mother that "as much money as he had involved in it, it looked like to him that she ought to deed the land to him." The record does not show that Mrs. Wofford had any independent advice about the matter. The deed recites a consideration of $10. There is nothing in the record to show that Mrs. Wofford, who could neither read nor write, had any knowledge of the value of the 317.5 acres of land, with the improvements thereon, at the time the deed was executed, or that she had any knowledge of the amounts of money which G. W. Wofford had advanced for the payment of taxes, repairs and improvements on the property. No proof was offered during the trial to show the value of the 317.5 acres of land; but, if we take into account the fact that the 80-acre tract of land in Section 8, which was admittedly owned by Jeff E. Wofford's heirs, was sold by a special commissioner under an order of the court for the sum of $4,350 prior to the filing of this appeal, it may be reasonably assumed that the total amount of expenditures made by G. W. Wofford for taxes, repairs and improvements on the 317.5 acres of land represented only a small part of the market value of the 317.5 acres, with the improvements thereon, at the time of the execution of the quitclaim deed. If G.

W. Wofford's purpose in having his mother convey the lands to him was to protect his dependent sister Lizzie from being disturbed in her possession of the property after his mother's death and to assure himself that he would be reimbursed for the expenditures made by him for taxes, repairs and improvements on the property, as his statement to Ruble Griffin clearly indicates, such purpose could have been accomplished without having his mother convey to him a fee simple title to the property, which would make him, or his heirs, sole owners of the property after Miss Lizzie's death.

It is argued, however, on behalf of the appellees that Mrs. Wofford confirmed and ratified her deed to G. W. Wofford prior to her death, when without any outside influence she told her daughter, her sister and other collateral relatives that she was ''very happy'' about conveying the property to G. W. Wofford because she felt secure the rest of her life. But we think there is no merit in that contention. Mrs. Wofford lived only four months after the date of the execution of the deed; and there is no evidence in the record to indicate that the undue influence referred to above ceased to be operative at any time during that four months period.

Finally, it is argued that, regardless of the constructive fraud alleged to have been committed by G. W. Wofford in advising or persuading his mother to convey the property to him, the appellants waited too long to act, and this Court should affirm the finding of the chancellor that the appellants were guilty of laches which barred their right to have the deed cancelled. But we think the doctrine of laches has no application to the facts in this case. It was generally understood by all of the parties that Miss Lizzie should retain possession of the lands and receive the rents therefrom after her mother's death. Miss Lizzie remained in possession of the lands and collected the rents after her mother's death without objection on the part

of any of the heirs and was still in possession of the lands at the time of the trial. Under these circumstances the appellants had a right to assume that Miss Lizzie's possession was that of a cotenant holding possession for all of the heirs. Nichols et al. v. Gaddis & McLaurin, Inc., 222 Miss. 207, 75 So. 2d 625. No acts of ouster against any of the other heirs were committed by G. W. Wofford, and no demand for the payment of rent to him was made during the ten-year period which elapsed between the date of the execution of the quitclaim deed and the date of G. W. Wofford's death. Miss Lizzie remained in possession of the lands and collected the rents therefrom after G. W. Wofford's death and was in possession of the lands at the time of the filing of the appellants' cross bill in this suit.

██ ''One in peaceable possession of property under claim of right may rest in security until his title or possession is attacked, and the failure to appeal to equity during that period is no defense to a suit subsequently brought to establish, enforce, or protect his right.'' 30 C.J.S., 538, Equity, Sec. 116c.

In the case of Newman v. White Lbr. Co., 162 Miss. 581, 139 So. 838, the Court said: ''One who is in the actual or constructive possession of land, and who has the right of possession and of the property therein, needs no action to enforce his rights. He is already in the enjoyment of all the law can give him, unless he finds some defect in his title, which he is entitled to have remedied, such as an erroneous description in a conveyance, as to which he is not required to take action until his title is menaced by an adverse claim.''

██ The purchase of the tax title by G. W. Wofford in his own name two years before he obtained the deed from his mother can add nothing of value to the complainants' claim of title to the lands as sole owners thereof. The record shows that the lands were sold by the tax collector on September 16, 1942, for taxes

·due and unpaid for 1939; and that G. W. Wofford bid for and purchased the lands at the tax sale for the sum of $109.54. The chancery clerk thereupon executed and delivered to him, on October 1, 1942, a tax deed conveying the lands to him for that amount. G. W. Wofford was managing the lands at that time for his mother. His relation to his mother at that time was that of a fiduciary; ██ ██ and it is well-settled that a business agent or other fiduciary charged with the management of his principal's property cannot purchase and retain a tax title to the property for his own benefit. Pomeroy's Equity Jurisprudence, Vol. 3, Fifth Edition, p. 825, Sec. 959c, and cases cited. G. W. Wofford's purchase of the lands at the tax sale, under the circumstances stated above, amounted in equity to no more than the payment of the taxes; and the only right acquired by him as a result of the purchase of the lands at the tax sale was the right to be reimbursed for the expenditures made by him in the payment of the taxes.

██ ██ There is no merit in the appellants' fourth assignment of error relating to the chancellor's finding that G. W. Wofford had spent $855.88 for the payment of taxes and the making of repairs on the 80-acre tract of land which was ordered to be sold prior to the date of this appeal.

██ ██ The chancellor, in our opinion, was correct in his holding that the deed executed by Jeff E. Wofford to Mary Ellen Wofford on November 29, 1921, should be reformed so as to describe correctly the lands in Section 5, Townshp 21 North, Range 11 East, which were owned by Jeff E. Wofford at the time the deed was executed. But we think the chancellor erred in his holding that the title to the 317.5 acres of land should be confirmed in the complainants. We also think the chancellor erred in his holding that the quitclaim deed executed by Mary Ellen Wofford to G. W. Wofford on December 12, 1944, was a valid deed and in dis-

missing the appellants' cross bill asking that the deed be cancelled. The appellants, in our opinion, were entitled to have the quitclaim deed cancelled as a cloud upon their title as heirs of Mary Ellen Wofford, deceased, and to have the lands partitioned or sold for a division of proceeds among the several cotenants according to their respective interests, as prayed for in their cross bill.

For the reasons stated above the decree of the lower court will be affirmed in so far as the decree provides for the reformation of the deed executed by Jeff E. Wofford to his wife, Mary Ellen Wofford, on November 29, 1941, so as to describe correctly the land in Section 5 intended to be conveyed thereby. But the decree will be reversed in so far as it confirmed title to the 317.5 acres of land in the complainants, and in so far as it ordered that the appellants' cross bill be dismissed; and a decree will be entered here cancelling as a cloud upon the appellants' title the above mentioned quitclaim deed executed by Mrs. Mary Ellen Wofford to G. W. Wofford, dated December 12, 1944; and the cause will be remanded for such further proceedings as may be proper and in accord with the views stated in this opinion.

Affirmed in part; reversed in part, and remanded.

*McGehee, C. J.,* and *Gillespie, McElroy* and *Jones, JJ.,* concur.