566 So.2d 217 (1990)
Lois L. MARSALIS & Judy Marsalis Clark
v.
Albert LEHMANN, Amy Lehmann Garraway, Louis Lehmann, Jr., Geoffrey Lehmann, & Lucy Lehmann.
No. 07-CA-59031.
Supreme Court of Mississippi.
August 29, 1990.
*218 John W. Prewitt, Sr., James L. Penley, Jr., Vicksburg, for appellants.
R. Kenneth Hudson, Gwin Lewis Punches & Hudson, Natchez, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Lois Marsalis and Judy Marsalis Clark, proponents of the last will and testament of Mrs. Tamma Lehmann, deceased, appealed from a judgment of the Chancery Court, Claiborne County, Mississippi, sustaining the motion for summary judgment of Albert Lehmann, Amy Lehmann Garraway, Louis Lehmann, Jr., Geoffrey Lehmann, and Lucy Lehmann, contestants of the will. The judgment set aside the will, revoked letters testamentary to Lois Marsalis, ordered a full inventory and accounting by Lois Marsalis and distribution of the estate according to Mississippi laws of descent and distribution. The proponents have appealed to this Court and present four issues for decision.

FACTS
Mrs. Tamma M. Lehmann died August 21, 1984, in the Mercy Hospital, Vicksburg, Mississippi, at the age of ninety four years. On February 14, 1984, she executed her last will and testament naming as beneficiaries the appellants and appellees. She named her daughter, Lois L. Marsalis, Executrix of the will and the bulk of her estate was devised and bequeathed to Lois.
Mrs. Lehmann's husband died in 1972. They owned a home and property in Hermanville and had lived there for a number of years. Mrs. Lehmann continued to reside at the home in the Hermanville Community until October 1973, when she moved to Vicksburg and lived in the home of her daughter, Lois L. Marsalis, until her death. She was eighty four years at the time and was physically and mentally alert and able to tend to her own needs.
In 1979, Mrs. Lehmann broke her hip and, afterward, could walk only with the aid of a walker. She could move around the house but confined those movements primarily to her own bedroom and bathroom. She had a television set in her room, which she enjoyed, and when the family had guests, she joined her daughter and son-in-law and the guests in the den. The record reflects that Lois had a relationship of trust, love and affection with both parents and was attentive to their needs when they were well and she was devoted to caring for her mother when her mother's physical condition declined. Both parents had reposed trust in their daughter.
Mrs. Lehmann executed an oil lease in 1980 or 1981 for which she was paid approximately $31,000. In her deposition, Lois Marsalis was asked what she did with the proceeds of the lease money, and she testified:
Put them in  did what my mamma told me, put them in the First National Bank Money Market. But Albert called up after  becaused [sic] he leased land at the same time and he called up to the house and said, "I hope Mother is going to divide this money off  this oil money." And I went back there and told Mamma, and Mamma says, "No." Said, "He leased his place and he got as much as I did." And says, "I am not going to divide it. It is for me and my use as long as I'm living, then it's for you and Buster."
The money was put in money market certificates in the joint names of Tamma Lehmann and Lois Marsalis. Lois attended to the business transactions of Mrs. Lehmann, explicitly following Mrs. Lehmann directions.
In 1981, Mrs. Lehmann told Mrs. Marsalis to give certain information to Mrs. Lehmann's long time attorney, Drake, in order to draw up a new will for her. Lois conveyed the information to Mr. Drake's office *219 and he drew the new will and sent it to Mrs. Lehmann. He executed the will on February 14, 1981, in the presence of Lois Marsalis and her husband, Buster Marsalis, and two attesting witnesses, Katherine and Dwayne Stagg. At the time of executing the will, Mrs. Lehmann's hearing was good but her eyesight was failing. She was mentally alert.

LAW

I.

THE LOWER COURT ERRED IN DENYING APPELLANTS THE OPPORTUNITY TO PRESENT EVIDENCE TO REBUT THE PRESUMPTION OF UNDUE INFLUENCE BY THE LOWER COURTS GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
Although four issues were presented on this appeal, issue number one is dispositive of the case and will be the only issue discussed.
Pertinent parts of the chancellor's finding of fact and conclusion of law follow:
Under circumstances where a confidential and fiduciary relationship exists, in this state it appears to be the well settled law that a presumption of undue influence arises which must be overcome by the proponents of a will by clear and convincing evidence. [citations omitted]
It is further well settled in Mississippi that once a presumption of undue influence arises, the proponents of a will must prove by clear and convincing evidence a lack of undue influence; further, part of the necessary proof is that a proponent must show good faith on the part of the grantee/beneficiary; grantor's full knowledge and deliberation of her actions and their consequences; and advice of (a) competent person disconnected from the grantee and devoted wholly to the grantor/testator's interest. Will of Polk supra, at 817-818.
It is also apparent under the authorities cited that there must be clear and convincing proof of each of these elements. In this case, as in McDowell, supra, it is clear by the testimony of Mrs. Lois Marsalis in her deposition that Mrs. Lehmann did not receive any independent advice or counsel prior to the execution of the will on February 14, 1981, or prior to the creation of the joint accounts and the deposit of $31,500.00 in oil lease proceeds.
The Court finds that the Defendant, Mrs. Marsalis has conceded this by her testimony at her deposition.
The Court therefore finds and concludes that a confidential and fiduciary relationship existed as between Mrs. Tamma Lehmann, the deceased, and Defendant Lois L. Marsalis beginning June 1, 1979, and continued thereafter until Mrs. Lehmann's death in August, 1984. Therefore, the Court finds that all transactions as between Lois Marsalis and Mrs. Tamma Lehmann from and after June 1, 1979, to the date of Mrs. Lehmann's death, as well as all transactions conducted by Mrs. Marsalis on behalf of Mrs. Tamma Lehmann during such time period are hereby declared to be void and set aside.
The law of undue influence, confidential relationships and burden of proof is equally applicable to inter vivos gifts and testamentary matters. [citations omitted].
It is apparent that the learned chancellor was of the opinion that Mrs. Lehmann did not receive any independent advice or counsel in the matters involved here and that he was strongly influenced by that view. This Court has modified the test for rebutting a presumption of undue influence and no longer requires the independent advice of a competent person but instead requires a showing of the grantor's "independent consent and action." Mullins v. Ratcliff, 515 So.2d 1183, 1193 (Miss. 1987). In Blissard v. White, 515 So.2d 1196 (Miss. 1987), Thera B. White died at the age of ninety one. She executed a will leaving her entire estate to one of her brothers, Dwight Blissard. Five nieces and nephew contested the will contending that there was a fiduciary relationship between the testatrix and Blissard and that Blissard *220 exercised undue influence over her. Thera White had executed a general power of attorney empowering Blissard to act on her behalf and the contestants claimed that the attorney had done legal work for Blissard which rendered him incompetent to give independent advice to the testatrix. After a full trial, the lower court held that there was no undue influence exercised upon the testatrix and that her acts were her own free and independent expressions of her will. In affirming the judgment of the lower court, this Court stated the following with reference to independent advice and counsel:
This case is controlled by Mullins v. Ratcliff, 515 So.2d 1183, 1193 (Miss. 1987). In Mullins, we declared that, before a bequest such as that here will be enforced, the legatee, Dwight, must show (1) his good faith; (2) the testatrix' full knowledge and deliberation of her actions and their consequences; and (3) the testatrix' independent consent and action.
No serious doubts appear of Dwight's good faith. The evidence shows that Thera White was a strong willed and capable woman who was in charge of her financial affairs with only "leg work" aid from her brother. John Sibley's testimony is quite convincing that Thera, in willing her estate to her brother, was doing exactly what she desired to do. Sibley was competent to render independent advice despite the fact he had done legal work for Dwight (preparing a deed and two wills). We are not concerned with Sibley's independence so much as with Thera's, of which there is evidence in abundance. Indeed, were we to disqualify Sibley's advice, we would create a trap which would void bona fide gifts and bequests among family members in small towns and rural areas all over the state.
Blissard v. White, 515 So.2d 1196, 1200 (Miss. 1987) In Matter of Will of Adams, 529 So.2d 611 (Miss. 1988), the parties stipulated that there was a confidential relationship between the testatrix and the beneficiary. The case proceeded to trial before the chancellor without a jury. At the close of the testimony, the chancellor found that Simm, the beneficiary, failed to overcome the presumption of undue influence and he found that the will was invalid. On appeal, this Court held that there must be a showing (by clear and convincing evidence) that Simm abused the relationship by asserting dominance over the testator. The Court further held that the facts did not mandate a holding that an abuse of confidential relationship of the type which gives rise to a presumption of undue influence existed between the testator and the beneficiary, and reversed and remanded for a new trial.
This Court found in Minor v. Bertasi, 530 So.2d 168 (Miss. 1988) that though a father lived with and was financially and physically dependent on one son and relied on that son to contact an attorney, and another son regarding a conveyance of land to the two sons, the father was sharp mentally; was aware of his family and finances; was strong willed and was not susceptible to outside influence. We affirmed holding that the evidence supported the lower court's finding that there was no undue influence.
This Court conducts a de novo review in determining whether or not the lower court was correct in granting a summary judgment and, in doing so, we follow the same procedure that is required of the trial court. Miss.R.Civ.P. 56. The movant has the burden of demonstrating that no genuine issue of fact exists while non-movant is given the benefit of every reasonable doubt. Newell v. Hinton, 556 So.2d 1037, 1041-42 (Miss. 1990); Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984); Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983).
We are of the opinion that the record in this case indicates that there was a genuine issue of fact on the question of undue influence and that the lower court committed reversible error in declining to permit the appellant to proceed with a full trial and to present evidence in rebuttal of the confidential relationship. Therefore, the judgment of the lower court is reversed and the case is remanded for a full trial on the merits.
REVERSED and REMANDED.
*221 DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
HAWKINS, P.J., concurs with specially concurring opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.
HAWKINS, Presiding Justice, specially concurring:
I concur in reversing this case.
In the first place, chancery courts, which do not have the same consideration as circuit courts, should be very loathe to become side-tracked on a motion for summary judgment when hearing the entire case will in all likelihood result in little more expenditure of time. McMullan v. Geosouthern Energy Corp., 556 So.2d 1033, 1036 (Miss. 1990).
I would regret any emasculation of the presumption of undue influence which arises from a dominant party to a confidential relationship receiving a benefit, either by gift or will. This bright line rule has served this state well for almost two centuries. We made the following observation in the recent case, Estate of McRae, 522 So.2d 731 (Miss. 1988):
The legal principle which declares that a benefit conveyed by a beneficiary unto his trustee is presumptively void is not new. It was a long-settled principle of law prevailing in this country and Great Britain when this Court adopted it in Meek v. Perry, 36 Miss. 190 (1858). It has lost none of its vitality over the decades. See Hitt v. Terry, 92 Miss. 710, 46 So. 829 (1908); Ham v. Ham, 146 Miss. 161, 110 So. 583 (1926); Bourn v. Bourn, 163 Miss. 71, 140 So. 518 (1932); Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959); Wofford v. Wofford, 244 Miss. 442, 142 So.2d 188 (1962); In re Will of Moses, 227 So.2d 829 (Miss. 1969); Hendricks v. James, 421 So.2d 1031 (Miss. 1982); Murray v. Laird, 446 So.2d 575 (Miss. 1984). While its application, like the tide, may ebb and flow, as long as cupidity and avarice remain a part of the human character, courts will retain this salutary principle.
Why is this rule necessary? It is because this is the only method available to frustrate the success of a greed in larcenous form, carried out with no one present but the dominant party and his dependent victim. It alone can nullify a closet advantage taken by the strong upon the weak and dependent, in which the malefactor only in the rarest instances would ever be detected.
This is why the law declares that when there is a fiduciary or confidential relation, and there is a gift or conveyance of dubious consideration from the subservient to the dominant party, it is presumed void. This is not because it is certain the transaction was unfair, to the contrary, it is because the Court cannot be certain it was fair. As stated in Meek v. Perry, 36 Miss. at 246, "if the court does not watch these transactions with a jealousy almost invincible, in a great majority of cases, it will lend its assistance to fraud." [Emphasis original]

Id. at 737.
The entire problem in this case could have been avoided by the experienced and able lawyer in this case taking the simple precaution of seeing that the main beneficiary under the will was not present when the will was discussed with or executed by the testatrix. He had been the attorney for the testatrix for many years. The careful draftsman and practitioner will make certain that his conversations with the testator or grantor are entirely private.
There is another reason why the motion for summary judgment in this case should have been overruled. It is not at all clear that Lois L. Marsalis actively participated in the preparation or procurement of this will, at least to the degree to trigger the presumption. As opposed to a lifetime gift, in order to set aside a will in which the dominant party to a confidential relation was a beneficiary, it must also appear that such person actively engaged in its preparation or execution. Croft v. Alder, 237 Miss. 713, 115 So.2d 683, 686 (1959); In re Will of Adams, 529 So.2d 611, 614 (Miss. 1988). Mrs. Marsalis did not employ the *222 attorney, did not pay him, nor did she give him any instructions on her own.
DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.