# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1385


**SLAYTER & SLAYTER, LLC**

**VERSUS**

**BRUCE RYLAND**


**\*\*\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
### NINTH JUDICIAL DISTRICT COURT,
### PARISH OF RAPIDES, NO. 213,293
### HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

## JIMMIE C. PETERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.


**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


**Henry H. Lemoine, Jr.**
**Attorney at Law**
**607 Main Street**
**Pineville, LA 71360**
**(318) 473-4220**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Slayter & Slayter, LLC**
    **Slayter LLC**
    **Aaron Slayter, Sr.**

**Charles S. Weems, III**
**Trevor S. Fry**
**Michael J. O'Shee**
**Gold, Weems, Bruser, Sues & Rundell**
**2001 MacArthur Drive**
**Post Office Box 6118**

**Alexandria, LA 71307-6118**
**(318) 445-6741**
**COUNSEL FOR DEFENDANT/APPELLEE:**
 **Bruce Ryland**

PETERS, J.,

In this litigation, Slayter & Slayter Limited Liability Company, Slayter Limited Liability Company, and Aaron Slayter, Sr. brought suit against Bruce Ryland, seeking to recover a money judgment against him under various theories of recovery. They now appeal the trial court's grant of a peremptory exception of prescription in favor of Mr. Ryland, dismissing all of their claims against him. For the following reasons, we affirm in part, reverse in part, and remand this matter to the trial court for further proceedings.

## PROCEDURAL HISTORY

This litigation began as a suit by Slayter & Slayter Limited Liability Company (Slayter & Slayter LLC) filed against Mr. Ryland on May 30, 2003. In that initial suit, Slayter & Slayter LLC asserted that Mr. Ryland, as a former employee, owed the company $124,451.50. The petition asserted that this total included $47,777.00, which Mr. Ryland took from the company by writing unauthorized checks and overdrawing his personal capital account, and $76,674.50 in unpaid loans from the company. Mr. Ryland responded to the suit on July 7, 2003, with an answer and reconventional demand wherein he named Slayter & Slayter LLC, Slayter Limited Liability Company (Slayter LLC) and Mr. Slayter as defendants in reconvention.[1]

Slayter LLC and Mr. Slayter only became party plaintiffs in the litigation on September 30, 2005, when they joined with Slayter & Slayter LLC in filing a cross-claim[2] against Mr. Ryland. In the cross-claim, the three plaintiffs sought to recover

[1]Mr. Ryland's pleading is actually a reconventional demand as to Slayter & Slayter LLC only. La.Code Civ.P. art. 1061. The claim against Slayter LLC and Mr. Slayter is a third party demand. La.Code Civ.P. art. 1111. However, the specific classification of these parties in Mr. Ryland's responsive pleadings does not affect the disposition of the issues on appeal. Mr. Ryland later amended his reconventional demand to add a number of other companies which appear to be interrelated, but the status of these companies is not before us.

[2]This filing is not properly a cross-claim as Mr. Ryland is not a "co-party" to any of the cross-claim plaintiffs. La.Code Civ.P. art. 1071. However, as was the case with the reconventional

$41,756.75 from Mr. Ryland because of his alleged negligent failure to timely cancel certain insurance policies when instructed to do so. The amount sought to be recovered represented the cost of the insurance premiums paid after the policies were thought to have been cancelled.

On May 2, 2006, Mr. Ryland filed a peremptory exception of prescription as to all claims asserted against him by Slayter & Slayter LLC, Slayter LLC, and/or Mr. Slayter. After a June 12, 2006 hearing, the trial court granted the exception and dismissed all of the plaintiffs' claims. The trial court executed a judgment to that effect on June 20, 2006, and the three plaintiffs perfected this appeal.

## FACTUAL HISTORY

The trial court based its decision on the testimony of Mr. Ryland, the deposition testimony of Mr. Slayter,[3] and a number of documentary exhibits. Although the trial court did not elaborate on its factual findings in granting the exception, there is little dispute concerning the factual background needed to resolve the issues now before us.

The trial record establishes that Slayter LLC and Slayter & Slayter LLC are member-managed Louisiana limited liability companies[4] with Mr. Slayter as the sole manager of Slayter LLC, and his son, Aaron Slayter, Jr., as the sole manager of Slayter & Slayter LLC. Mr. Ryland was one of the original members of Slayter &

---

demand issue, this classification does not affect the disposition of the issues on appeal.

[3]Despite having attested to the accuracy of the factual allegations in the pleadings filed on behalf of the three plaintiffs, Mr. Slayter's deposition testimony lent little support for the plaintiffs' assertions, as he professed to have little or no memory of, and/or involvement in, the activities giving rise to the litigation.

[4]Slayter LLC was formed effective January 1, 1995, and Slayter & Slayter LLC was formed effective March 30, 1998.

Slayter LLC and, sometime after its organization, obtained an ownership interest in Slayter LLC.[5]

Mr. Slayter was married to Mr. Ryland's mother[6] when Mr. Ryland began working for one of the interrelated companies in the mid 1980's.[7] Mr. Ryland's initial employment amounted to nothing more than performing "odd jobs." However, he ultimately became office manager/comptroller[8] in September of 1992. He held that position in one or more of the interrelated companies until his employment was terminated on July 6, 2001. On that day, Mr. Slayter forwarded Mr. Ryland a letter informing him that, effective that date, he was "relieved and dismissed from all [his] responsibilities and duties from Slayter LLC, Slayter and Slayter LLC, and all companies and properties associated."

Mr. Ryland's office manager/comptroller position did not include the duties imposed on the "manager" as named in the organizational documents of the two limited liability companies[9] although it did include personal services to Mr. Slayter. According to Mr. Slayter, "[Mr. Ryland] was in charge of my personal insurances, my personal bills, paying the company bills, seeing that the companies were properly insured, seeing that the taxes were computed correctly." Additionally, he was responsible for "[p]reparing paperwork for the people that prepared the taxes [for the

_____

[5]His interest was set at one percent in each company.

[6]The couple divorced on August 7, 1997.

[7]Mr. Slayter owns a number of interrelated companies, some of which preexisted the current litigants.

[8]The record does not establish which of the interrelated companies retained his services as office manager/comptroller, but it was obviously neither Slayter & Slayter LLC nor Slayter LLC because those companies had not been created at the time.

[9]The individual managers named in the organizational documents have absolute power in the long range and day to day operation of the individual companies.

companies]." Mr. Ryland had check-writing authority for both Mr. Slayter and Slayter & Slayter LLC. Despite this long list of responsibilities, Mr. Slayter strongly suggested that Mr. Ryland's job performance was less than satisfactory and that Mr. Ryland had no true responsibility. In his testimony, Mr. Ryland agreed with Mr. Slayter's description of his duties, but suggested that he had a number of other non-administrative duties not normally expected of a true office manager/comptroller.[10]

The $124,451.50 claimed by Slayter & Slayter LLC in the initial pleading is derived from five separate transactions involving Mr. Ryland while he worked for the company. Slayter & Slayter LLC asserts that in 1996, Mr. Ryland borrowed $50,000.00 from the company and never repaid the loan; that in the early part of 1999, he borrowed $26,674.50 from the company to purchase a horse trailer and never repaid the loan; that in April of 2000, he wrote and negotiated a $6,900.00 company check without authorization; that in April of 2001, he wrote and negotiated a $7,300.00 company check without authorization; and that at some point during his employment, he overdrew his personal capital account by $33,577.00.

Mr. Ryland admits receiving the funds at issue, but denies the nature of all but one of the transactions as described by Slayter & Slayter LLC. According to Mr. Ryland, the $50,000.00 was a gift from Mr. Slayter and the two company checks and the withdrawal from his personal capital account were salary related and completely authorized. He does admit that the $26,674.50 at issue was a loan, but asserts that he paid it back, in cash, to Mr. Slayter.

The claim asserted against Mr. Ryland by Slayter & Slayter LLC, Slayter LLC, and Mr. Slayter in the subsequently filed cross-claim has as its origins Mr. Slayter's

---

[10]Mr. Ryland suggested that he was required to check the mail each morning, among other less than administrative duties.

divorce from Mr. Ryland's mother. According to the pleadings, Mr. Slayter and Mr. Ryland's mother were divorced on August 7, 1997, but before the divorce they had entered into certain agreements wherein Mr. Slayter agreed to maintain certain insurance policies to the benefit of his estranged spouse. The pleadings further assert that after Mr. Slayter had completed his obligations under the agreements and was no longer required to provide that insurance coverage, he instructed Mr. Ryland to cancel the appropriate insurance policies, but Mr. Ryland did not follow those instructions. The three plaintiffs argue that, because of Mr. Ryland's "negligence," Mr. Slayter and the two companies lost $41,756.75 in premiums for unnecessary insurance.[11] Mr. Ryland did not address this issue in his testimony at the hearing on the prescription exception.

**OPINION**

The plaintiffs assert that all of the claims are personal actions subject to the ten-year prescriptive period provided for in La.Civ.Code art. 3499. Mr. Ryland asserts that they are subject to either the one-year prescriptive period provided for in La.Civ.Code art. 3492 or the three-year prescriptive period provided for in La.Civ.Code art. 3494. The trial court agreed with Mr. Ryland and dismissed all of the plaintiffs' claims.

*Prescription of Loans at Issue*

Louisiana Civil Code Article 3499 provides that "*[u]nless otherwise provided by legislation*, a personal action is subject to a liberative prescription of ten years." (Emphasis added). One of those legislative exceptions is La.Civ.Code art. 3494(3), which provides that "[a]n action on money lent" is subject to a three-year prescriptive

_____

[11]Neither the pleadings nor the evidentiary record breaks down the losses sustained by each individual plaintiff.

5

period. Slayter & Slayter LLC clearly asserts in its pleadings, as did Mr. Slayter in his deposition testimony, that the $50,000.00 transaction and the $26,674.50 transaction were loans. The $50,000.00 transaction occurred in 1996, and the $26,674.50 transaction occurred in January and February of 1999.[12] Mr. Slayter testified that no payments were made on either loan. Suit on this issue was filed on May 8, 2003, or more than three years after the transactions. "[W]hen the plaintiff's petition has clearly prescribed on its face . . . the burden shifts to the plaintiff to prove that prescription has been suspended or interrupted." *Rizer v. Am. Sur. & Fid. Ins. Co.*, 95-1200, p. 3 (La. 3/8/96), 669 So.2d 387, 388. Slayter & Slayter LLC presented no evidence to establish suspension or interruption of the prescriptive period. Thus, these claims have prescribed, and we find no error in the trial court's grant of the exception of prescription as to these claims.

### *Unauthorized Withdrawals Issue*

With regard to the $44,777.00 at issue in the original petition of Slayter & Slayter LLC, Mr. Ryland contends that the three transactions giving rise to the amount in controversy are subject to the one-year prescriptive period of La.Civ.Code art. 3492 and not the ten-year prescriptive period for breach of fiduciary duties under La.Civ.Code art. 3499. Without acknowledging the truth of the allegations against him, Mr. Ryland points out that the one-year prescriptive period of La.Civ.Code art. 3492 applies to "[d]elictual actions," and that the claims against him are delictual in nature, ie., theft and embezzlement. Because the alleged acts occurred in 2000 and

---

[12]The $26,674.50 transaction consisted of the issuance of two checks. The first, for $25,000.00, was issued on January 30, 1999, for the purchase price of the horse trailer and was made payable to the vendor. The second, for $1,674.50, was issued on February 4, 1999, for the payment of taxes and license fees and was made payable to the Department of Public Safety of the State of Louisiana.

6

2001, he asserts that the claims asserted in Slayter & Slayter LLC's May 30, 2003 suit have prescribed.

While recognizing the prescriptive period set forth in La.Civ.Code art. 3492, we also note that a suit for breach of fiduciary duties is generally a personal action governed by the ten-year prescriptive period of La.Civ.Code art. 3499. *Beckstrom v. Parnell*, 97-1200 (La.App. 1 Cir. 11/6/98), 730 So.2d 942. Thus, if a fiduciary relationship existed between Mr. Ryland and Slayter & Slayter LLC in 2000 and 2001, the claims have not prescribed.

In *State v. Hagerty,* 251 La. 477, 205 So.2d 369, 374-375 (La.1967), *cert. denied,* 391 U.S. 935, 88 S.Ct. 1848 (1968), the supreme court, quoting a number of sources, established the meaning of fiduciary as follows:

> "The word 'fiduciary,' as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking. Also more specifically, in a statute, a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person, trust or estate. * * *" 36A C.J.S. Fiduciary, p. 381.

> "One is said to act in a 'fiduciary capacity' or to receive money or contract a debt in a 'fiduciary capacity,' when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part. The term is not restricted to technical or express trusts, but includes also such offices or relations as those of an attorney at law, a guardian, executor, or broker, a director of a corporation, and a public officer. * * * " Black's Law Dictionary, Fourth Edition (1951), Fiduciary Capacity. Cf. Oldland v. Gray, 10 Cir., 179 F. 2d 408; Emery & Kaufman, Ltd. v. Heyl, 227 La. 616, 80 So.2d 95; Wofford v. Wofford, 244 Miss. 442, 142 So.2d 188.

7

Louisiana law imposes a fiduciary duty to the corporation on corporate officers and directors. *Quartana v. Jenks,* 436 So.2d 1335 (La.App. 5 Cir.), *writ denied,* 441 So.2d 1224 (La.1983). Additionally, La.R.S. 12:91(A) provides, in pertinent part, that:

> Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment, and skill which ordinarily prudent men would exercise under similar circumstances in like positions . . .

In the matter now before us, the trial court addressed the fiduciary issue and reached the following conclusion:

> I do not find that the conduct of Mr. Ryland rose to the level of a fiduciary. I believe he was an at-will employee at best, and a glorified gopher in which he was told what to do and when to do it and how to do it. I believe any actions taken by him would have been short-lived and probably would have been a complete firing and termination at that point.

While we agree with the trial court that some of Mr. Ryland's obligations were less than administrative, it is not disputed that he held the position of office manager/comptroller at the time he wrote the alleged unauthorized checks and made the alleged overdraft of his capital account. In fact, Mr. Ryland judicially admitted that relationship and is bound by its pleadings in that regard.[13] *J.H. Jenkins Contractors, Inc. v. Farriel*, 261 La. 374; 259 So.2d 882 (La.1972).

A comptroller, or controller, is "the chief accounting officer of a business enterprise whose duties [usually] include responsibility for all accounting, budgeting, costing, and internal auditing functions . . ." Webster's Third New International Dictionary of the English Language, Unabridged 468 & 497 (Philip Babcock Gove

---

[13]In his July 7, 2003 answer and reconventional demand, Mr. Ryland alleged that "[f]rom approximately September 1992 through July 6, 2001, [he] was employed by [Slayter & Slayter LLC, Slayter LLC and Mr. Slayter] as an officer manager/comptroller."

ed., 1986). This definition is consistent with the description of Mr. Ryland's employment position as described by both Mr. Slayter and Mr. Ryland. Mr. Ryland clearly was an officer of Slayter & Slayter LLC and owed a fiduciary duty to the company. That being the case, the ten-year prescriptive period of La.Civ.Code art. 3499 is applicable to his actions, and the trial court erred in granting his exception of prescription as to these claims.

### *Negligence Issue*

Mr. Slayter, Slayter & Slayter LLC, and Slayter LLC filed their cross-claim on the insurance issue, asserting that Mr. Ryland was negligent in failing to cancel the insurance policies, some eight years after the alleged conduct. Even conceding that Mr. Ryland was working in a fiduciary relationship at the time of his alleged negligent acts, his conduct is governed by a one-year prescriptive period. *See Young v. Adolph,* 02-67 (La.App. 5 Cir. 5/15/02), 821 So.2d 101; *Dela Vergne v. Dela Vergne,* 99-364 (La.App. 4 Cir. 11/17/99), 745 So.2d 1271. Thus, their petition had prescribed on its face and the burden shifted to them to prove suspension or interruption of prescription. *Rizer*, 669 So.2d 387. The plaintiffs presented no evidence to establish that prescription had been suspended or interrupted, and we find no error in the trial court's determination that the negligence claim had prescribed.

### DISPOSITION

For the foregoing reasons, we affirm the trial court's judgment dismissing the claim of Slayter & Slayter Limited Liability Company against Bruce Ryland for recovery of the unpaid loans in the amount of $76,674.50; we reverse the trial court's judgment dismissing the claim of Slayter & Slayter Limited Liability Company

9

against Bruce Ryland for the unauthorized withdrawals in the amount of $47,777.00, and remand that matter for further proceedings; and we affirm the trial court's judgment dismissing the negligence claim of Slayter & Slayter Limited Liability Company, Slayter Limited Liability Company, and Aaron Slayter, Sr. against Bruce Ryland. We assess one-half of the costs of this appeal to the plaintiffs, Slayter & Slayter Limited Liability Company, Slayter Limited Liability Company, and Aaron Slayter, Sr., and we assess one-half of the costs of this appeal to the defendant, Bruce Ryland.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**